Minute Order Form (06/97)

# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Suzanne B. Conlon | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 01 C 8655 | **DATE** | 2/18/2003 |
| **CASE TITLE** | ROMELL ROBERT CARTER vs. NORTHWEST AIRLINES, INC. | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]
(2) ☐ Brief in support of motion due _____.
(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.
(4) ☐ Ruling/Hearing on _____ set for _____ at _____.
(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(7) ☐ Trial[set for/re-set for] on _____ at _____.
(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.
(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
    ☐ FRCP4(m)   ☐ Local Rule 41.1   ☐ FRCP41(a)(1)   ☐ FRCP41(a)(2).
(10) ■ [Other docket entry]   Defendant's motion for summary judgment [33-1] is granted. ENTER MEMORANDUM OPINION AND ORDER.

*Suzanne B. Conlon*

(11) ■ [For further detail see order attached to the original minute order.]

| | | | | | |
|---|---|---|---|---|---|
| | No notices required, advised in open court. | | | | **Document Number** |
| | No notices required. | | number of notices | | |
| ✓ | Notices mailed by judge's staff. | | FEB 2 0 2003 | | |
| | Notified counsel by telephone. | | date docketed | | 61 |
| | Docketing to mail notices. | | docketing deputy initials | | |
| | Mail AO 450 form. | | 2/18/2003 | | |
| | Copy to judge/magistrate judge. | | date mailed notice | | |
| CB | courtroom deputy's initials | Date/time received in central Clerk's Office | PW mailing deputy initials | | |

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| ROMELL ROBERT CARTER | ) | |
| | ) | |
| Plaintiff, | ) | No. 01 C 8655 |
| | ) | |
| v. | ) | Suzanne B. Conlon, Judge |
| | ) | |
| NORTHWEST AIRLINES, INC. | ) | |
| | ) | |
| Defendant. | ) | |

DOCKETED
FEB 10 2003

## MEMORANDUM OPINION AND ORDER

Romell Carter sues his former employer, Northwest Airlines, Inc. ("Northwest"), for failing to reasonably accommodate him as required by the Americans with Disabilities Act of 1990 ("ADA"), 104 Stat. 328, 42 U.S.C. § 12101 *et seq*. Northwest moves for summary judgment pursuant to Fed. R. Civ. P. 56 and Local Rule 56.1. Carter moves to strike the affidavit of Judith Thomes pursuant to Fed. R. Civ. P. 37.

## BACKGROUND

I. **Carter's Motion to Strike the Affidavit of Judith Thomes**

In support of its motion for summary judgment, Northwest offers the affidavit of Judith Thomes. Northwest did not disclose Thomes' identity in its initial or supplemental Rule 26(a)(1) disclosures. Nor did Northwest identify Thomes in response to Carter's October 1, 2002 interrogatories until November 25, 2002 – the date discovery closed and Northwest filed its motion for summary judgment.

Rule 26(e) requires parties to supplement their Rule 26(a) disclosures at "appropriate intervals," and amend their responses to discovery requests "seasonably." Northwest offers no

1



justification as to why it waited until the last day of discovery to disclose the Thomes' affidavit. A party that fails to comply with Rule 26(e) *without substantial justification* is not permitted to use the information as evidence at trial or on a motion for summary judgment. Fed. R. Civ. P. 37(c)(1). Carter's motion to strike the affidavit of Judith Thomes is granted.

## II. Facts

The following facts are undisputed unless otherwise noted. Northwest hired Carter in 1996 as an equipment services employee at O'Hare International Airport. Carter's duties included loading luggage and cargo onto planes and carts. In July 1999, Carter crushed his right foot in an accident involving two forklifts. He required surgery and received continued medical treatment. Carter now walks with the assistance of a cane. He wears special shoes to relieve some of the pressure on his foot, but he experiences burning and numbness. He is able to climb stairs slowly, lift ten pound objects, and stand for up to ten minutes.

For months after the accident, Carter could not work. But in March 2000, a doctor released him to work with certain restrictions. According to the doctor, Carter could lift twenty pounds occasionally, ten pounds frequently, and could constantly move objects requiring a negligible amount of force. The doctor indicated that Carter could push, pull, reach overhead, and perform bending activities occasionally. When Carter returned to work, however, he found he was unable to perform his duties as an equipment services employee.

In June 2000, Margaret Sommers, accommodations assessment advisor for Northwest, made numerous attempts to invite Carter to explore potential employment accommodations by participating in an accommodation assessment. An accommodation assessment determines whether an employee can perform essential functions of a presently-held position with

2

accommodation. Sommers advised Carter by letter that she would conduct the assessment on July 5, 2000. Carter knew about the assessment, but did not participate or notify Sommers of his inability to attend because he did not have access to a phone. Sommers conducted the assessment with Aaron Sinder, Northwest's cargo manager at O'Hare Airport. They reviewed Carter's work restrictions and the essential job functions of an equipment services employee. After the assessment, Sommers advised Carter by letter that Northwest could not identify accommodations that would allow him to perform the essential functions of his current position and remain within his work restrictions. Sommers offered Carter an opportunity to explore other positions with Northwest through its alternate duty exploration process.

After the accommodation assessment, Carter and Sommers first spoke by telephone. They discussed his educational background, prior work history, transferable work skills, possible alternative jobs, and other areas where he might want to work. They discussed various job openings for positions, including reservation sales agent, customer service representative, clerical, World Club, and customer relations positions. Sommers read through titles of jobs available at Northwest, but Carter did not have information concerning the qualifications or duties for the jobs. After speaking with Sommers, Carter thought the reservations sales agent position would be best for him. Sommers did find a sedentary Equipment Service Employee position, unique to Northwest's Detroit stations, that she thought Carter could perform. However, the positions were held by Northwest employees with thirteen years more seniority than Carter. Thus, the position was not an option.

On July 17, 2000, Sommers provided Carter with a company-wide job posting. Carter did not apply for any position. On other occasions in August 2000, Sommers sent Carter other

3

materials regarding job openings. She also sent an advanced bid form to apply for a reservations sales agent position. In early September 2000, Sommers provided Carter with additional advanced bid forms upon his request. Sommers told Carter to call her with any questions.

In September 2000, Carter submitted four bids for the position of reservation sales agent. Northwest awarded Carter's bid for a position in Tampa, Florida. However, Carter failed the typing test administered to prospective reservation sales agents. After failing the test, Carter requested that Northwest provide him with a typing class as an accommodation for the reservation sales agent position. Northwest agreed and arranged for a keyboarding course at Chicago State University. After Carter completed the course, Northwest twice advised him that he could retake the keyboard assessment test at anytime. Carter did not retake the test.

## DISCUSSION

### I. Standard of Review

Summary judgment is appropriate when the moving papers and affidavits show there is no genuine issue of material fact and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). Once a moving party has met its burden, the non-moving party must go beyond the pleadings and set forth specific facts showing there is a genuine issue for trial. Fed. R. Civ. P. 56(e); *Silk v. City of Chicago*, 194 F.3d 788, 798 (7th Cir. 1999). A genuine issue of material fact exists when "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Liberty Lobby*, 477 U.S. at 248; *Insolia v. Philip Morris, Inc.*, 216 F.3d 596, 599 (7th Cir. 2000). The summary judgment standard is applied with special scrutiny to employment discrimination cases because the

outcome may depend on determinations of credibility and intent. *Michas v. Health Cost Controls of Illinois*, 209 F.3d 687, 692 (7th Cir. 2000).

## II. The ADA

The ADA requires covered entities, including private employers, to provide "reasonable accommodations to the known physical or mental limitations of an otherwise qualified individual with a disability who is an applicant or employee, unless such covered entity can demonstrate that the accommodation would impose an undue hardship." *Toyota v. Williams*, 534 U.S. 184, 193 (2002), *citing* 42 U.S.C. § 12112(b)(5)(A). Northwest is an "employer" within the meaning of the ADA. Def. 56.1 Facts at ¶ 3. Therefore, to recover for failure to reasonably accommodate, Carter must show: (i) that he was or is disabled as defined by the ADA; (ii) that his employer was aware of his disability; and (iii) that he was qualified for the position in question. *Conteras v. Suncase Corp.*, 237 F.3d 756, 762 (7th Cir. 2001) (citations omitted).

### A. Disability under the ADA

The ADA defines a disability as "a physical or mental impairment that substantially limits one or more of the major life activities of such individual." 42 U.S.C. § 12102(2). The parties do not dispute that Carter's foot condition is a physical impairment. Walking is a major life activity. *Toyota v. Williams*, 534 U.S. 184, 197 (2002). The relevant question, therefore, is whether Carter's foot impairment *substantially limits* his walking.

"'Substantially' in the phrase 'substantially limits' suggests 'considerable' or 'to a large degree.'" *Toyota*, 534 U.S. at 197. The word "substantial" precludes "impairments that interfere in only a minor way." *Id.* Therefore, Carter's impairment must prevent or severely restrict him

5

from walking in a permanent or long term way. *Id.* at 198; *Dvorak v. Nostardi Platt Assoc., Inc.*, 289 F.3d 479, 484 (7th Cir. 2002).

Carter walks with a cane. He experiences constant burning and numbness in his foot. He is able to climb stairs slowly, but painfully. He can only stand for ten minutes. Northwest places great importance on Carter's ability to drive to a health club, sit in the hot tub, swim in the pool, use an upper body weight lifting machine, and ride a stationary bike. But these activities are not relevant to whether Carter's impairment substantially limits his ability to walk. Given the facts, a reasonable jury could find that Carter's impairment substantially limits his ability to walk.

### B. Northwest's Awareness of the Disability

To recover under the ADA, Carter must show that Northwest was aware of his disability. *Contreras*, 237 F.3d at 762. Northwest simply argues that it was unaware of Carter's disability because Carter was not disabled. As the moving party, Northwest fails in its burden to identify evidence that demonstrates an absence of genuine issues of material fact. *Celotex*, 477 U.S. at 323. Northwest knew of Carter's impairment, his time away from work, and his doctor's orders upon return. In the absence of evidence refuting Northwest's knowledge, the court must draw the reasonable inference that a jury could find Northwest knew of Carter's disability.

### C. Carter's Qualifications

Under the ADA, Carter must establish he was qualified for the desired employment positions by showing he was physically capable of performing the essential functions of the position, with or without reasonable accommodation, and that he meets the legitimate requirements set by Northwest for the position. *Contreras*, 237 F.3d at 762; 42 U.S.C. § 12112(b)(5)(A). Carter was not capable of performing as an equipment services employee

without accommodation. Def. 56.1 Facts, Ex. D at 92-93. Nor was Carter capable of performing as a reservations sales agent without accommodation. Def. 56.1 Facts at ¶ 89 (Carter failed the keyboard assessment portion of the test for reservation sales agent). Therefore the relevant question is whether Carter was capable of performing in his desired employment positions with reasonable accommodation.

"The appropriate reasonable accommodation is best determined through a flexible, interactive process that involves both the employer and the employee with a disability." *Rehling v. City of Chicago*, 207 F.3d 1009, 1015 (7th Cir. 2000) (citations omitted). Northwest engaged in a two-step interactive process: the accommodation assessment and the alternate duty exploration process.

## 1. The Accommodation Assessment

The accommodation assessment began in June 2000. On multiple occasions, Sommers attempted to contact Carter and sent him a letter inviting him to participate in the assessment. Carter knew about the assessment, but did not attend or call to reschedule. In his absence, Sommers conducted the assessment with Sinder and determined Carter could not perform the essential duties of an equipment services employee with reasonable accommodation.

Carter argues the assessment was inadequate because the assessment did not identify alternative positions; it focused only on whether Carter could perform the equipment services job he held at the time of his accident. But Carter misses the point of Northwest's accommodation assessment. The purpose of the assessment was to identify whether Carter could perform his job as an equipment services employee with an accommodation. Def. 56.1 Facts at ¶ 30. Once that was decided, Sommers moved to the alternative duty exploration process to identify alternative

7

positions. The fact that Northwest did not identify alternative positions in the initial accommodation assessment is irrelevant and does not create a genuine issue of material fact.

Carter argues that Northwest accommodated other employees in the equipment services department with physical restrictions similar to Carter. Carter contends that Northwest was unwilling to engage in any legitimate assessment of his capabilities and asserts there were possible accommodations. But the ADA only requires Northwest to make a reasonable attempt to determine an accommodation. *Beck v. University of Wisconsin Board of Regents*, 75 F.3d 1130, (7th Cir. 1996). The facts reveal that Northwest attempted to engage in an interactive accommodation assessment. Northwest contacted Carter about the assessment, but he did not participate. "A party that obstructs or delays the interactive process is not acting in good faith. A party that fails to communicate, by way of initiation or response, may also be acting in bad faith. In essence, courts should attempt to isolate the cause of the breakdown and then assign responsibility." *Bultemeyer v. Fort Wayne Community Schools*, 100 F.3d 1281, 1285 (7th Cir. 1996). In essence, Carter does not create a genuine issue of material fact by pointing to the faults of an accommodation assessment that he chose not to attend. In his absence, Sommers and Sinder evaluated the essential job functions of the equipment services employee position and Carter's work restriction. A reasonable jury could not find that Northwest was unreasonable in this assessment.

## 2. The Alternative Duty Exploration Process

After the accommodation assessment, Sommers contacted Carter about the alternative duty exploration process. In early July 2000, Sommers talked with Carter and agreed to send him every job posting available throughout Northwest. In addition, they discussed Carter's skills,

interests, educational background, prior work history, work skills, and possible alternative jobs. They specifically discussed job openings for positions that included reservation sales agent, customer service representative, clerical, World Club, and customer relations positions. During the process, Sommers encouraged Carter to apply for jobs. Carter thought the reservations sales agent position would be best for him. From then on, Sommers supplied Carter with company-wide listings, reservations sales agent openings, and bid forms. One of Carter's bids for a reservations sales agent position was successful.

Carter argues the exploration process was deficient because the job lists sent to him were in abbreviated form, like "CUST SVC AGT" and did not contain an abbreviation key or explain requirements of each job. Carter argues he was left to decide alone whether he was qualified for positions. He likens the Northwest exploration process to the deficient interactive process in *Hendricks-Robinson v. Excel Corp.*, 154 F.3d 685, 693 (7th Cir. 1998). In *Hendricks-Robinson*, the employer simply posted portions of all jobs available and misled its employees by failing to bid for employees as promised. But here, Sommers learned of Carter's skills, knowledge, abilities, and *desire* to work as a reservations sales agent. She provided lists of openings, but also tailored the search to the reservation sales agent position. In addition, she sought out a sedentary equipment services employee position, unique to Detroit, and independently inquired about its availability. After Carter failed the typing test for the reservation sales agent position, Northwest arranged for him to take keyboarding classes at Chicago State University. Northwest then encouraged him to retake the reservation sales agent typing test, but he failed to do so. This personal attention is far from the misleading and generic job postings in *Hendricks-Robinson*.

9

No reasonable jury could find that Northwest failed in its obligation to engage in reasonable accommodation through the interactive process.

## CONCLUSION

Although a reasonable jury could find that Carter was disabled for purposes of the ADA, he fails to establish that Northwest did not engage in reasonable accommodation through its accommodation assessment and alternative duty exploration process. Northwest sought to include Carter in its accommodation assessment. Its efforts to accommodate Carter were reasonable. Accordingly, Northwest's motion for summary judgment must be granted.

February 18, 2003

ENTER:

Suzanne B. Conlon
United States District Judge